**Bruce R. BENNETT, Plaintiff,**

v.

**Ardelle WILLIAMS, et al., Defendants.**

**Civ. No. 88–0466–K(BTM).**

United States District Court,
S.D. California.

June 28, 1988.

William R. Thomas, II, San Diego, Cal., for plaintiff.

Lori A. Miller, Baker & McKenzie, San Diego, Cal., for defendants.

### MEMORANDUM DECISION AND ORDER

KEEP, District Judge.

### BACKGROUND

On December 20, 1983, plaintiff/debtor Bruce Bennett ("Bennett") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. 11 U.S.C. § 101, *et seq.* Pursuant to Fed.R.Evid. 201, this court takes judicial notice of the public court files and records in this earlier bankruptcy case filed in the Southern District of California, Case No. 83–05819–M11. *See MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986). On August 1, 1984, Bankruptcy Judge Malugen entered an order approving the appointment of defendant Ardelle Williams ("Williams") as the trustee of the estate, fixing bond at $30,000. On August 3, 1984, the bankruptcy court approved the $30,000 bond of Williams executed by defendant The Travelers Indemnity Company ("Travelers").

Part of debtor Bennett's bankruptcy estate included 11 different parcels of income-producing real property in San Diego. On August 29, 1984, trustee Williams filed an application to employ Pro Management, Inc. as the property manager of these 11 parcels, stating in this application that Pro Management was an experienced property

management firm which currently managed 140 properties and that it was necessary to employ Pro Management's services in order to effectively manage the properties and collect rents. This application was supported by a declaration from Barry Nussbaum, president of Pro Management, stating that the firm had been involved in property management for more than five years and during that time had managed hundreds of different properties. Nussbaum further stated that Pro Management was currently managing 140 properties comprised of 500 to 600 units and that the firm's services included collection of rents, eviction of tenants, maintenance of books, payment of bills, and the like. Finally, Nussbaum noted that the bankruptcy court had approved his employment in two other bankruptcy proceedings. The bankruptcy court subsequently entered an order pursuant to 11 U.S.C. § 327 authorizing the employment by the trustee of Pro Management as a professional property manager for the estate.

The bankruptcy action was eventually dismissed on July 11, 1985, subject to certain conditions which were subsequently satisfied by September 1, 1985. Plaintiff Bennett has been maintaining his business and operating the properties of the estate since that date. On May 16, 1986, plaintiff filed a complaint in the Superior Court of San Diego County against Pro Management, alleging breach of contract, breach of implied and express warranties, negligence, conversion, accounting, and fraud in connection with Pro Management's handling of the estate property. Pursuant to Fed.R.Evid. 201, I also take judicial notice of the court files in this Superior Court case, Case No. 565612. *See MGIC Indemnity, supra,* 803 F.2d at 504. That complaint does not allege any wrongdoing on the part of trustee Williams.

On December 7, 1987, plaintiff filed this complaint against Williams and Travelers in the Superior Court of San Diego County, alleging breach of fiduciary duty, negligence, and a cause of action to recover under the surety bond. Specifically, the complaint alleges that Williams breached her fiduciary duty as trustee by negligent-

ly misrepresenting the qualifications and expertise of Pro Management and that Williams negligently failed to supervise and attend to the activities of the property management company during the time it was retained. Defendants subsequently removed the action to this court on the ground that the acts at issue in the lawsuit were undertaken in Williams' capacity as a court-appointed bankruptcy trustee. Both defendants now move to dismiss the action with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that: (1) Williams is entitled to derivative judicial immunity for her conduct as trustee; (2) plaintiff's negligence and breach of fiduciary duty claims are barred by the applicable one-year statute of limitations; and (3) in any event, Travelers should be dismissed because it has no liability under the surety bond for Williams' errors and omissions.

## DISCUSSION

The courts have recognized that "judicial immunity not only protects judges against suit from acts done within their jurisdiction, but also spreads outward to shield related public servants, including ... trustees in bankruptcy...." *Wickstrom v. Ebert,* 585 F.Supp. 924, 934 (E.D.Wis.1984). However, such immunity is not unlimited. As one court has stated:

> Bankruptcy trustees serve a variety of functions. Under current law, a trustee is immune from liability for claims arising out of some but not all of those functions. A trustee's position will not immunize him from suit for torts committed in conducting the business affairs of a bankrupt company. On the other hand, trustees and receivers acting as officers of the court to conserve the bankrupt estate's assets are immune from suit.

*Weissman v. Hassett,* 47 B.R. 462, 466 (S.D.N.Y.1985).

Other courts have articulated similar generalized distinctions between what actions are and what actions are not protected by the shield of judicial immunity. For example, the court in *In re Tucker Freight Lines, Inc.,* 62 B.R. 213, 217 (W.D.Mich. 1986), stated that "[a] trustee has immuni-

ty only if his actions are within the scope of the authority conferred upon him by statute or the court." In *Boullion v. McClanahan*, 639 F.2d 213 (5th Cir.1981), the bankrupt debtor filed a breach of fiduciary action against the court-appointed trustee, alleging that he recommended an inexperienced appraiser, allowed the filing of an incorrect appraisal, improperly handled sales of the estate property, and failed to surrender disclaimed and exempt assets. The Fifth Circuit court found that all of the trustee's actions were approved by orders of the bankruptcy court and that the trustee was acting under the supervision and subject to the orders of the bankruptcy judge. The *Boullion* court held that since the trustee, "as an arm of the court, sought and obtained approval of his actions, he is entitled to derived immunity." 639 F.2d at 214.

The Ninth Circuit has essentially adopted a similar general standard for determining when a trustee has immunity. While a bankruptcy trustee in the Ninth Circuit may be held liable for negligent as well as intentional conduct, *see In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir.1983), "a trustee in bankruptcy or an official acting under the authority of the bankruptcy judge is entitled to derived judicial immunity because he is performing an integral part of the judicial process." *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir.1986) (citing to *Boullion*).

Plaintiff essentially concedes that, under this case law, the bankruptcy court's approval of Williams' employment of Pro Management immunizes her from liability for negligence in selecting this firm. However, plaintiff argues that this case is distinguishable from *Boullion* and the other cases in that the complaint also alleges negligent supervision of Pro Management by the trustee after the firm took over its management responsibilities; plaintiff contends that Williams' actions in supervising (or failing to supervise) Pro Management were not approved by the bankruptcy court and therefore are not immune from liability. Basically, plaintiff contends that the employment of Pro Management and the actions of Williams herself were in the conduct of the debtor's business, as expressly authorized under 11 U.S.C. § 1108, and therefore are not immune from liability under *Weissman, supra*, 47 B.R. at 466.

Unfortunately, the court has been unable to find any published case law involving a similar factual pattern. The closest analogy appears to be the *Boullion* case, in which the trustee was held to be immune for his ongoing handling of the estate, including allegedly allowing an incorrect appraisal and improperly handling the sale of the property. However, as plaintiff points out, the *Boullion* court specifically noted that each of these actions had been approved by the bankruptcy judge, a circumstance that was not present with regard to Williams' allegedly improper supervision of Pro Management.

Nevertheless, I find that the same policy that supports the imposition of derived judicial immunity when a trustee explicitly seeks judicial approval also suggests that derivative immunity is appropriate in this case. As defendants persuasively argue, the reason a bankruptcy trustee seeks out the professional services of someone who has more expertise in the particular workings of a bankrupt company or business is to more effectively conserve the assets of the estate and fulfill his or her fiduciary obligations. Presumably this is the same reason that the Bankruptcy Code authorizes the employment of professionals to assist the trustee, 11 U.S.C. § 327, and a bankruptcy court approves the employment of a professional to manage the business of the estate pursuant to this authorization. In doing so, both the trustee and the bankruptcy court are thereby relying on the expertise of the professional. A trustee's derived immunity in selecting a manager with the approval of the court would be of no value if the trustee could still be held liable for constant supervision of the manager's activities. As the *Weissman* court suggests, *supra*, even the remote prospect of personal liability for the actions of the management company could not help but lessen the vigor with which trustees would pursue their obligations; if the trustee can

be held liable for the negligence of the management company, he or she will be less inclined to add an extra layer of supervisorial responsibility by employing professional managers, as the Bankruptcy Code certainly encourages. Since trustees are rarely themselves experts in the particular bankrupt business, a rule of liability that discourages the employment of more knowledgeable professionals will necessarily be a detriment to the estate.

Moreover, as defendants point out, plaintiff is currently pursuing an action directly against Pro Management in state court. Pro Management is not protected by derived immunity, and it is that state court lawsuit which provides the proper avenue for redressing plaintiff's injuries. Thus, a finding of derived judicial immunity for trustee Williams does not deprive plaintiff of a remedy; it merely furthers the policies of the Bankruptcy Act.

Accordingly, IT IS HEREBY ORDERED that defendant Williams' motion to dismiss the complaint with prejudice is granted.

In light of this ruling, I do not reach defendants' other arguments regarding the appropriate statute of limitations and Travelers' liability on the surety bond.