**In re Niels & Susan JACKSEN, Debtors.**

**Thomas & Sandra READ, Appellants,**

**v.**

**Charles DUCK, Trustee, Appellee.**

**BAP No. NC–88–1680–MeRJ.**

**Bankruptcy No. 1–80–00167.**

**Adv. No. 1–88–0097.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted Without Oral Argument May 5, 1989.

Decided Sept. 27, 1989.

---

Thomas Read and Sandra Read, pro se.

Before MEYERS, RUSSELL and JONES, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### ·I

Appellants ("Reads"), appearing pro se, appeal from: (1) the bankruptcy court's order removing their litigation against the trustee from Connecticut state court to the Bankruptcy Court for the Northern District of California and (2) the bankruptcy court's issuance of a permanent injunction barring the Reads from either enforcing their judgment against the trustee personally or from proceeding to enforce the judgment in another court. We AFFIRM.

## II

### FACTS

The debtors, ("Jacksens"), filed for Chapter 11 relief on March 4, 1980. On November 28, 1984, the case was converted to Chapter 7 and a trustee, Charles Duck ("Trustee"), was appointed. During the pendency of the Chapter 11 proceeding, the Jacksens brought an action in Connecticut state court against the Reads for prepetition rent allegedly owed them. The Reads then filed a counterclaim. The Trustee in the bankruptcy case, as the real party in interest, was substituted in by order of the Connecticut court and a second revised complaint was filed naming him in his official capacity as trustee for the Jacksen estate. Ultimately, the Reads obtained a judgment in their favor on the complaint and a $10,000 award against the Trustee on their cross-complaint. The Reads had the Connecticut judgment entered as a sister-state judgment against the Trustee in Sonoma County Municipal Court. The Trustee then submitted a motion to vacate the entry and applied for removal of the action to the Bankruptcy Court for the Northern District of California where the debtors' original petition was filed. A hearing was held on this motion on July 15, 1988. Thereafter, the court issued a permanent injunction prohibiting the Reads from taking any action to enforce the Connecticut judgment against the Trustee personally and enjoining them from enforcing the judgment against any person without leave of the bankruptcy court. This appeal followed.

## III

### DISCUSSION

#### A. Jurisdiction

Pro se briefs are held to a less strict standard than those drafted by a lawyer. *Bonner v. Lewis*, 857 F.2d 559, 563 (9th Cir.1988). *See also Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir.1987). Courts are to make reasonable allowances for pro per litigants and to read pro se papers liberally. *McCabe v. Arave*, 827 F.2d 634, 640 n. 6 (9th Cir.1987). Although

it is difficult to decipher the precise issue the Reads attempt to raise in their briefs, a liberal reading suggests that they are challenging the bankruptcy court's authority to enter its injunction. The Reads maintain that the removal action before the bankruptcy court was not a "core" proceeding and therefore, the court lacked authority to enter its injunction. This issue is raised for the first time on appeal.

■ As a general rule, an appellate court will not consider an issue raised for the first time on appeal. *Community Elec. Service v. National Elec. Contr.*, 869 F.2d 1235, 1241 (9th Cir.1989); *In re Film Ventures Intern, Inc.*, 89 B.R. 80, 85 (9th Cir.BAP 1988). However, it has the discretionary power to do so in some narrow circumstances. *In re Wind Power Systems, Inc.*, 841 F.2d 288, 290 n. 1 (9th Cir.1988); *Grauvogel v. C.I.R.*, 768 F.2d 1087, 1090 (9th Cir.1985). We do so here because justice will be better served if we address all of the pro se litigants' contentions.

■ In the case before us, we are convinced that the bankruptcy court had jurisdiction to issue its permanent injunction. Injunctions are authorized under 11 U.S.C. Section 105(a), which empowers the bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Code, including restraining actions. *In re Johns–Manville Corp.*, 801 F.2d 60, 63 (2d Cir.1986). *See generally In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986). Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately under 28 U.S.C. Sections 157 and 1334. *See In re Johns–Manville Corp., supra,* 801 F.2d at 63.

■ Bankruptcy courts have jurisdiction to "hear and determine ... all core proceedings ... arising in a case under title 11." 28 U.S.C. Section 157(b)(1) (Supp. II 1984). Here, we conclude that the bankruptcy court relied for jurisdiction on Section 157(b)(2)(A), as the matter was a "core" proceeding, encompassing "[m]atters concerning the administration of the estate." *See In re Elsinore Shore Associ-*

*ates,* 91 B.R. 238, 255 (N.J.1988). An action enjoining the Reads from attempting to enforce a judgment against the trustee personally is, by its nature, a "matter concerning the administration of the estate" and therefore, was a "core" proceeding. 28 U.S.C. Section 157(b)(2)(A) (Supp. II 1984). Thus, our conclusion that the bankruptcy court had jurisdiction to enter its injunction is inescapable. *See In re Johns–Manville Corp., supra,* 801 F.2d at 64.

## B. Derived Judicial Immunity

We review factual decisions of the trial court based on the clearly erroneous standard. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985) (describing clearly erroneous review generally). *See also In re Reddington Investments Ltd. Partnership—VIII,* 90 B.R. 429, 430 (9th Cir.BAP 1988); *Matter of Torrez,* 63 B.R. 751, 753 (9th Cir.BAP 1986), *aff'd,* 827 F.2d 1299 (9th Cir.1987).

■ The Reads argue that the bankruptcy court erred in permanently enjoining them from prosecuting their judgment against the Trustee. They assert that the trustee is personally liable for the judgment taken against him in his representative capacity as Trustee for the Jacksens. Their contention lacks merit.

The courts have recognized that "judicial immunity not only protects judges against suit from acts done within their jurisdiction, but also spreads outward to shield related public servants, including ... trustees in bankruptcy...." *Bennett v. Williams,* 87 B.R. 122, 123 (S.D.Cal.1988). *See Wickstrom v. Ebert,* 585 F.Supp. 924, 934 (E.D.Wis.1984). That immunity, however, is not unlimited.

■ The Ninth Circuit Court of Appeals in *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1357 (9th Cir.1983), stated that a bankruptcy trustee may be held liable for negligent as well as intentional conduct pertaining to duties placed on him by law. *See also Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951) (a bankruptcy trustee may protect himself from

personal liability by seeking instruction from the court). Other courts have clarified which actions may or may not be clothed in the trustee's blanket of immunity by observing that "[a] trustee has immunity only if his actions are within the scope of the authority conferred upon him by statute or the court." *In re Tucker Freight Lines, Inc.*, 62 B.R. 213, 217 (W.D. Mich.1986). *See also Weissman v. Hassett*, 47 B.R. 462, 466 (S.D.N.Y.1985). This circuit has adopted a similar rationale stating that a trustee or an official acting under the authority of the bankruptcy judge is entitled to derived judicial immunity because he is performing an integral part of the judicial process. *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir.1986). *See also Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981). Therefore, based on the Ninth Circuit's *Cochise* holding, it follows that a trustee, who obtains court approval for actions under the supervision of the bankruptcy judge, is entitled to derived immunity. *Boullion, supra*, 639 F.2d at 214. *See also In re XRX, Inc.*, 77 B.R. 797, 798 (Nev.1987). *See also*, Tiller, *Personal Liability of Trustees and Receivers in Bankruptcy*, 53 Am.Bankr.L.J. 75, 98 (Winter 1978).

The Reads maintain that the judgment they obtained against the Trustee, in his representative capacity as trustee for the Jacksens' Chapter 7 estate, can be enforced against the Trustee personally. Their argument, however, does not comport with either statutory authority or published case law.

It is well settled that the trustee in bankruptcy is an officer of the appointing court. Courts other than the appointing court have no jurisdiction to entertain suits against the trustee, without leave from the appointing court, for acts done in an official capacity and within his authority as an officer of the court. *See Barton v. Barbour*, 104 U.S. (Otto) 126, 136–37, 26 L.Ed. 672 (1881); *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir.1967). A limited exception to this rule exists under 28 U.S.C. Section 959(a) which provides that trustees may be sued without leave of the court appointing them, with respect to any of their transactions "in carrying on business connected with such property." A trustee who appears merely to prosecute and defend claims against the estate is not "carrying on business" as the term has been judicially interpreted. *Austrian v. Williams*, 216 F.2d 278, 285 (2d Cir.1954). *See also* 4 *Collier on Bankruptcy* ¶ 721.05[1] at 721–9 to 721–13 (15th Ed.1988).

Further, Bankruptcy Rule 6009 authorizes a trustee, with or without court approval, to prosecute or enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal. From the facts before us, it is clear that the Reads were well aware of the capacity in which the Trustee appeared in the litigation. In fact, the second amended complaint establishes that the Trustee appeared in his representative capacity as trustee for the Jacksen estate. The trustee was substituted into the Connecticut litigation merely to prosecute the Jacksens' claim and to defend the counterclaims. Moreover, the Reads did not attempt to seek judgment against the Trustee individually, but only in his capacity as trustee. The Reads sought to hold the Trustee personally liable for the first time when they attempted to collect on the judgment. Here, it cannot be said that there was any misunderstanding on the part of the Reads as to the Trustee's role in the litigation. It is therefore axiomatic that the Trustee, "as a trustee in bankruptcy [and] as an official acting under the authority of the bankruptcy judge, is entitled to derived judicial immunity because he is performing an integral part of the judicial process." *Lonneker, supra*, 804 F.2d at 1097.

Sound policy also mandates immunizing the trustee. The possibility that we would hold trustees personally liable for judgments rendered against them in their representative capacity would invariably lessen the vigor with which trustees pursue their obligations. Immunity is essential because, as Judge Learned Hand noted, "to submit all officials, the innocent as well as

the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949).

Thus, a finding of derived judicial immunity in this instance does not deprive the Reads of their remedy but merely furthers the policies of the Code. *Bennett, supra,* 87 B.R. at 125. Accordingly, we hold that the trustee, acting under the authority of the court, is entitled to derived judicial immunity. *Boullion, supra,* 639 F.2d at 214.

AFFIRMED.